HELLER, DELTAH CO., INC., ET AL. *v.* UNITED STATES

No. 7819.—

Entry No. 87121, etc.

Second Division, Appellate Term

(Decided April 21, 1950)

*John D. Rode* for the appellants.
*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before LAWRENCE and FORD, Judges

FORD, Judge: This application for a review of the judgment of the trial court, covering the appeals listed in schedule "A," hereto attached and made a part hereof, was filed under the provisions of section 501 of the Tariff Act of 1930. The merchandise, the value of which is here in question, consists of imitation pearl beads, known as qualities 292 and 313, exported from Spain and entered at the port of New York. Quality 292, in sizes 3–7 to 6–12, was entered at $3.90 per 100 strings. Quality 313, in sizes 3–7 to 5–10, was entered at $3.80, sizes 6–12 at $6, and sizes 3–7 to 5–10 at $3.90, all per 100 strings of 40 centimeters in length, packed, the price for the shorter or longer strings being in direct proportion.

The merchandise was appraised on the basis of foreign value in pesetas per 100 strings, packed, at different prices, depending upon the length of the string. It is the contention of appellants that there was no foreign value for such or similar merchandise at or about the dates of exportation; that the merchandise should be appraised on the basis of export value, and that such values are represented by the invoiced and entered values. On the other hand, appellee contends that the proper basis of appraisement is the foreign value, and that the invoiced and entered values do not represent export value because, as it contends, all sales were confined to the appellants herein.

The lower court found that:

Since the appraisements here were made on the basis of foreign value, which finding embraces the presumption that the export value for such or similar merchandise either is not higher than such foreign value or does not exist, I am of opinion that the failure of the plaintiffs herein to disprove the foreign value either as to basis or amount obviates the necessity of resolving the question as to the claimed export value. * * *

The trial court accordingly affirmed the appraised values.

As supporting its contention that there was no foreign value for merchandise such as or similar to that here involved, counsel for appellants offered and there was received in evidence by the court below an affidavit of one Edouard Heusch, who qualified as having had 25 to 30 years' experience in the manufacture and sale of imitation pearl beads such as and similar to those here involved. Affiant stated that:

* * * I further know that during the period from November 1936 to April 1938 no imitation pearl beads except those manufactured by the Industria Española de Perlas Imitation S. A. were either sold or offered for sale in the principal markets of Spain, either for consumption in Spain or for exportation to any country.

After listing all the sales for exportation to the United States of qualities 292 and 313 during the period here involved, affiant also says that:

I further state that the above sales were the only sales of qualities 292 and 313 for exportation to the United States and that there were no sales of any other qualities such as or similar to the said qualities 292 and 313.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

As regards *actual sales in the principal markets of Spain for home consumption* in Spain of qualities 292 and 313, I further state that during the period from November 1936 until April 1938 there were no sales made whatsoever in either qualities 292 or 313.

I further state that during said period there were no sales for home consumption in Spain of any qualities similar to qualities 292 or 313.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

I further state that during the period from November 1936 to April 1938 no qualities similar to qualities 292 and 313 were freely offered for sale for home consumption in Spain for the same reasons.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

I further state that a few other qualities of imitation pearl beads were made by the Industria Española de Perlas Imitation S. A. in addition to qualities 292 and 313 but that none of the other qualities were similar to qualities 292 and 313. Such other qualities as were made by the Industria Española de Perlas Imitation S. A. differed widely from qualities 292 and 313 since they were manufactured with different degrees of care and since the cost of materials and labor for such other qualities varied substantially.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

I further state that at no time during the period from November 1936 to April 1938 was there any connection, financial or otherwise, between the Industria Española de Perlas Imitation S. A. or The Indra Pearl Co. Ltd., and D. Lisner & Co. Inc., the Heller-Deltah Co. Inc., or Perlas Import Corporation.

After stating prices for certain sizes and lengths of imitation pearl beads, affiant further states:

In exact accordance with the above mentioned prices, said imitation pearl beads were freely offered for sale to all purchasers in the principal markets of Spain in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, * * *

The evidence contained in the above-quoted affidavit, admitted in evidence as plaintiffs' exhibit 16, in and of itself, and without any contradictory evidence, might be considered sufficient to establish the contention of the appellants herein. However, the record before us is replete with evidence which contradicts all the statements contained in the aforesaid affidavit, to enter into a detailed analysis and discussion of which would extend this opinion to unwarranted length.

In collective exhibit 17, which is a report of the special agent, the following is found:

The numbers 313 and 350 have not been offered or sold in the home market during the past year. Mr. Rich states, however, that one or two offers were made in 1937 and early 1938 on instructions from Heusch in an effort to show foreign value for the benefit of the United States Customs. No sales, however, were made as the quantity required on orders was 10,000 strings which was far too large for the Spanish market.

In reality, however, the same qualities as 313 and 350 are sold in the home market under the quality names "crack" and "check" respectively. The numbers 313 and 350 are simply numbers indicating these qualities ("crack" and "check") when sold for export to the United States. Ample evidence in this regard is given in the correspondence between Rich and Heusch, which is submitted with this report.

Qualities "check" and "crack" have been freely offered and sold in the home market as evidenced by the following sales as copied from the sales records:

\*     \*     \*     \*     \*     \*     \*

Under Exhibit "D" are submitted extracts of letters (Rich to Heusch and vice versa) taken from the correspondence files, for the years 1938 and 1939, of the I. E. P. I. of Manacor.

In exhibit "D," attached to collective exhibit 17, we find the following:

I hope that these price lists have been sent to the customers and that, as requested, each month you already have several invoices drawn up to 1 or 2 firms in Spain for the 313—If later you have to give proof of the "Home market price" you will certainly be obliged to prove it by invoices or by letters from customers for without such substantiation your explanations would not be taken seriously. You must not forget that these American agents know their business and can distinguish at once between what is plausible and what is not—I am warning you while there is still time.

\*     \*     \*     \*     \*     \*     \*

Quality 313 for America is our Crack quality. No mistake about that.

\*     \*     \*     \*     \*     \*     \*

Taking as a basis your export prices at the rate of exchange of 11.37 for one dollar, nobody can say anything et [and] moreover you will understand that we cannot work to lose all along the line. It is allright and we agree to sell pearls for New York at 33 Pts. when they cost us 45 Pts., but let us make up this loss on our sales to Spain.

\*     \*     \*     \*     \*     \*     \*

These price-lists have not been sent to the customers. However, if you examine them you will see that for qualities 350 and 313 the only ones of interest to us, since they are the only ones asked by Americans, I have taken as basis the price list Indra Pearl Marseille.

Effectively, the price-list Indra Pearl gives:

350 40 cm. $4.50 at the rate of exchange Pts 10.70 48.15 per 100 strings.
313 40 cm. $5.20 " " " " 55.15 " " "

You see that I have entirely based my prices on the prices Indra Pearl. You will understand that the Americans will not at the present time go into the question of the rate of exchange of the peseta.

\* \* \* \* \* \* \*

I am selling you the 313 America, i. e. a beautiful "Crack" 2½ 10 m/m at 33 Pts per 100 strings. We sell in Spain a "Check" much less beautiful than the 313 America at Pts 72 3 8 m/m and 87 Pts 3 10 m/m/.

We get therefore Pts 330 for 1000 strings 5 10 m/m America.
We get therefore Pts 870 for 1000 strings 5 10 m/m Spain.

\* \*\* \* \* \* \* \*

You who know all about pearls, all the factors that have to be considered, how can you for a second believe that we could make pearls of quality 313 in graduated strings (chutes) of 4–9 saleable at a price of 33 centimes.

\* \* \* \* \* \* \*

Again there is trouble from that side. I am waiting quietly for Mr. Delagrave and we shall see what he will require. If Mr. Delagrave comes you will accompany him, will you not, because it will be necessary to have this gentleman swallow a big pill. It is difficult to make a person believe that we can manufacture pearls at 33 cent. if this person wants to go to the bottom of things.

The above quotations from collective exhibit 17 are corroborated and supported by other evidence offered by the appellee herein.

After a careful consideration of all the evidence before us, we are satisfied that the weight thereof fully supports the conclusion reached by the trial court.

We therefore find as matter of fact:

1. That the merchandise, the value of which is here involved, consists of imitation pearl beads in strings imported from Spain, qualities 292 and 313.

2. That strings of imitation pearl beads known as qualities "crack" and "check" are such as or similar to the strings of imitation pearl beads here involved, known as qualities 292 and 313.

3. That strings of imitation pearl beads known as "crack" and "check" were freely offered and sold for home consumption in Spain, in accordance with the provisions of section 402 (c) of the Tariff Act of 1930, at or about the dates of exportation here involved, at prices equal to the values found by the trial court, to wit, the appraised values.

We therefore conclude as matter of law:

That foreign value is the proper basis for the appraisement of the merchandise here involved, and that such values are as set out in finding of fact No. 3.

The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.