(C. D. 1689)

D. LISNER & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 25, 1955)

*John D. Rode* for the petitioner.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the respondent.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a petition filed under section 489 of the Tariff Act of 1930 for the remission of additional duties which accrued by reason of undervaluation of strings of pearl beads imported from Spain in 1937 and 1938. The merchandise was entered at the invoice prices, which were claimed to represent the export value. It was appraised at higher values, based upon foreign value. Appeals were taken for reappraisement in these and other entries, and it was held

that foreign value was the proper basis of valuation and that the appraised values represented such value. *Heller, Deltah Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 428, Reap. Dec. 7689, affirmed in 24 Cust. Ct. 595, Reap. Dec. 7819, affirmed in 39 C. C. P. A. (Customs) 101, C. A. D. 471. The record in the reappraisement case was incorporated herein, with the exception of the reports of customs agents.

Before discussing the prolix record presented, it is pertinent to point out that the issue in the case now before us is whether or not petitioner has met the burden of proving that in making entry such good faith was exercised as is required by the statute. *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, 359, C. A. D. 41. Petitioner must show that in undervaluing the merchandise it was acting in entire good faith; that no facts or circumstances were known to it which would cause a prudent and reasonable person to question the correctness of the values given by him; and that a full disclosure was made to the collector of all material facts within its knowledge and possession. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578. Petitioner is under a duty to inform itself as to the correctness of its representations as to value; a showing of indifference does not meet the requirements of the statute. *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70.

The instant merchandise was manufactured by Industria Española de Perlas Imitation, S. A., at Palma de Mallorca, Spain, and was shipped and sold by Indra Pearl Co., Ltd., of Marseille, France. One Edouard Heusch was managing director of both concerns and was the person with whom petitioner had dealings in regard to this merchandise.

Louis K. Kislik, secretary and comptroller of the petitioner, testified that his firm had been regularly and continuously importing merchandise since 1888 and that up until the time of these importations it had never been accused of or charged with or investigated for or suspected of any fraud, concealment, misrepresentation, or bad faith in connection with any importation. He said that, prior to the present shipments, his firm had imported pearl beads from Spain, as far back as 1920, but that no importations had been made between 1932 and 1937 because of an unfavorable rate of exchange. In 1937, Heusch advised petitioner that he could resume the production of pearls at a cost of less than one-quarter of a cent an inch, and, after certain conferences and negotiations, petitioner ordered and purchased such pearls at a basic price of $3.90 per 100 strings of 16-centimeter length, or a fraction less than a quarter of a cent per inch. The significance of this price lies in the fact that the rate of duty on imitation pearl beads, valued at not more than one-fourth of a cent per inch, was

60 per centum ad valorem, but an additional specific duty was provided for higher valued pearls (paragraph 1503, Tariff Act of 1930).

Mr. Kislik stated that, as the merchandise arrived, the invoices were submitted to the appraiser for information as to value, but no information was received, and entry was made at the invoiced price. The witness stated that he thought that price was correct because his firm had been buying pearls at that price for many years and because he knew that Heller, Deltah Co., Inc., a competitor, had been negotiating and actually buying from the manufacturer. He stated as additional reasons for his belief that the invoice price was correct that petitioner had asked Heusch to make pearls specially designed for United States markets and that the consular invoices contained declarations of the shipper that the home market value, taxes included, was no higher than the invoice price. He said that the exporter had informed him that he freely offered these goods to other importers in the United States; that he, himself, knew the names of some, and that led him to believe that the goods were freely offered at the price he paid.

In addition, the witness testified that he knew the question of dumping had been raised in connection with these shipments; that no dumping duties had been paid; and that that led him to believe that his price was not less than the foreign value. On redirect examination, it was brought out also that the Government had claimed a violation of law in connection with these importations; that a check for $3,000 had been tendered and a petition filed, and that the money had been refunded because there was no fraud involved.

Mr. Kislik stated that he knew prior to appraisement in 1942 that customs officials were investigating the value of this merchandise, but he said that he was never shown the reports obtained and that he never received any information from any source which led him to think his values were other than correct. He explained that no steps were taken to amend the entries because it was not believed necessary; that he had discussed the question of valuation with the firm's attorneys and decided to litigate the case in the belief that the value was correctly stated on the invoices and entries.

The witness testified that he did not think that Heusch was selling any pearls in Spain, giving as reasons that the factory was not on the mainland but in Majorca; that Heusch was located in Perpignan, France; and that $800 had to be advanced to him before he could start production. He said that, to the best of his recollection, his firm contacted Heusch and asked whether he was selling in the home market and that he stated he was not. The witness was unable to produce any correspondence with Heusch in this connection and did not know whether there was any such correspondence or whether any inquiries were made of Heusch during the period from 1937 or 1938 to 1942.

In the reappraisement case, plaintiffs contended that there was an export value for this merchandise and that it was freely offered and sold to all purchasers for exportation to the United States at prices represented by the entered values. It was held, however, that such or similar pearls were sold in Spain at prices equal to the appraised values, and the merchandise was appraised on the basis of foreign value.

Considerable evidence was presented in the reappraisement case as to whether or not Heusch was limited in selling for export to three firms—the petitioner herein; Heller, Deltah Co., Inc.; and Perlas Import Co., a company formed and owned by the petitioner, by Heller, Deltah Co., Inc., and by Heusch. In the instant case, the witness Kislik stated that Heusch could freely offer his merchandise to all purchasers in the United States; that he did not think anyone could have stopped a firm from contacting Heusch directly, either here or abroad. He said that Perlas Import Co. was organized to act on Heusch's behalf, to transmit direct orders, on which it received no commission, and to buy and sell pearls for its own account. There is no evidence that there ever were any direct orders, but Perlas Import Co. did purchase pearls from Heusch which it sold to customers here. In the incorporated case, there was evidence that up until November 1937 petitioner and Heller, Deltah Co., Inc., took all the pearls that Heusch manufactured, and that Perlas Import Co. was organized to dispose of any surplus pearls that they could not use.

As to whether or not the petitioner had reason to believe that there was a free export market and no foreign market, we note also the following statements from a letter from petitioner to Edouard Heusch, dated September 11, 1937 (defendant's exhibit 5 in the incorporated case):

We now come to the other matter mentioned by you, namely that of Mr. Myer. Your handling of this affair has been terribly disappointing to us as you have placed us in a very uncomfortable position. In view of our previous agreement, we feel that you should have had no dealings with this party, but should have referred them to Sam Bamberger [of Perlas Import Co.]. In the first place you made a serious error in submitting samples to them.

We had hoped that by now you would realize that it is our desire to assist and cooperate with you to the fullest extent and, in turn, had felt that we had earned your confidence. If that is true then, in view of the agreement between yourself and us to the effect that Perlas would be your sole representative here, you should not have even contacted the Myers; especially since both we and the Hellers had warned you against dealing with anyone else.

\*   \*   \*   \*   \*   \*   \*

In this particular instance, the very party in question attempted to interfere in our business relations with you by protesting at our Customs House that the goods were undervalued. As a result cases were held up before they were delivered to us and the Hellers and a thorough investigation is being made by our Government. That is why some time ago we informed you that the goods had to be

offered elsewhere at the same prices as offered to us—but elsewhere certainly does not mean in the United States, but does mean in either your own or other foreign countries.

Respondent called Ralph I. Estreich, examiner of merchandise, who testified that he had discussed the value of this merchandise with Mr. Kislik several times; that he told him the value was under investigation and he could give him no information; that when the investigation was completed he sent the brokers notices for amendments. He admitted that he had never asked for any information from the importer which he did not obtain, but felt that the importer had concealed information in regard to an agreement between it and the shipper to restrict export sales to certain parties. He said that the correspondence between the importer and Heusch requesting that sales be limited to the three firms, heretofore mentioned, should have been revealed to him before the foreign investigation report brought the matter to his attention. He admitted that there was a difference of opinion between him and petitioner as to whether there was such an agreement, but he did not think it was a completely honest difference. He explained that until receiving the reports of the Government investigation he had contemplated appraising the merchandise on the basis of export value and that, therefore, petitioner's correspondence file was important, as export value could not be considered if there were a restricted market. He stated further that the foreign investigation report indicated that the importer did have information about sales in Spain.

The witness testified that the importer was given an opportunity to amend the entries, although such permission is not given when customs agents so request on the ground that there is a question of fraud involved. He explained that the right to amend was granted because a new basis of valuation, foreign value, was to be used on appraisement.

On this record, we are unable to hold that petitioner has sustained its burden of showing affirmatively that entry was made without intent to defraud the revenue, or conceal or misrepresent facts, or deceive the appraiser as to the value of the merchandise. *United States* v. *W. J. Westerfield,* 40 C. C. P. A. (Customs) 115, 124, C. A. D. 507.

The evidence herein establishes that the invoices were submitted to the appraiser but that he did not give the petitioner any information as to value because it was under investigation. That, in itself, was sufficient to put the petitioner on notice so as to require it to seek further information as to value before making entry. *United States* v. *H. S. Dorf & Co. of Pa., Inc.,* 36 C. C. P. A. (Customs) 29, A. C. D. 392; *A. N. Deringer, Inc.* v. *United States,* 42 C. C. P. A. (Customs) 28, C. A. D. 565.

This merchandise was finally appraised on the basis of foreign value, thus establishing that a higher foreign value existed. There is no evidence in the record that petitioner ever made more than the most casual inquiry, if any, as to foreign value. The witness Kislik stated that, to the best of his recollection, his firm contacted Heusch and was advised that he was not selling in the home market, but he (the witness) did not actually know if any inquiry was made and was unable to produce any correspondence on this point. Although he testified that he did not know that Heusch was selling pearls in Spain, the examiner stated that, according to his reports, the importer did have that information. Moreover, in the letter dated September 11, 1937 (defendant's exhibit 5 in the incorporated case), Heusch was directed to offer his goods in his own or other foreign countries. It is to be noted also that some of Mr. Kislik's statements indicate that he believed there was no foreign value and others that he thought the foreign value was no higher than the entered value. In our view, the record shows that there were facts and circumstances known to the petitioner which would have caused a reasonable and prudent person to make further inquiries as to the existence of foreign value and to question the correctness of the values given by him.

Furthermore, while petitioner denies that there was an attempt to create a restricted export market for this merchandise, it is clear that all of the facts in regard to the manner of selling these pearls for exportation to the United States were in its possession and that they were not disclosed to customs officials. Whether or not a restricted market did exist, the facts in petitioner's possession were pertinent to that question. It cannot be held, therefore, that petitioner made to customs officials a full and candid disclosure of all the material facts in its possession bearing upon the value of the merchandise.

Upon careful examination of the entire record herein, and for the reasons stated, we find that the petition must be denied. Judgment will be rendered accordingly.